IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARC SOVIK, ON BEHALF OF HIMSELF and ALL OTHERS Similarly-situated, <br><br> Plaintiff, <br><br> v. <br><br> DUCKS UNLIMITED, INC., <br><br> Defendant. | Case No. 3:11-0018 <br> District Judge Trauger <br> Magistrate Judge Knowles |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
OR IN THE ALTERNATIVE TO TRANSFER VENUE**

In support of its Motion to Dismiss, Defendant Ducks Unlimited, Inc. ("Ducks" or "Defendant") states as follows:

**I.     INTRODUCTION**

Plaintiff Marc Sovik ("Plaintiff" or "Sovik") asserts claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., on behalf of himself and others similarly situated. Specifically, Plaintiff alleges that Ducks misclassified its Regional Directors as "exempt employees" under the FLSA and unlawfully failed to pay them one and one-half times their regular rate of pay for overtime worked. As detailed below, Plaintiff's claims should be dismissed with prejudice in their entirety or, if Plaintiff is permitted to proceed on his claims, he should be compelled to do so in the United States District Court for the Western District of Tennessee.

1

Plaintiff's claims are barred in their entirety by the doctrine of judicial estoppel. Plaintiff failed to disclose his FLSA claims in bankruptcy proceedings that he initiated in July 2009, despite having knowledge of the alleged facts giving rise to his claims at the time he filed his Bankruptcy Petition. By concealing his claims from the Bankruptcy Court and his creditors, Plaintiff took the position that no such FLSA claims exist, and the Bankruptcy Court adopted and ratified this position in discharging Plaintiff's debts and closing the bankruptcy proceedings in October 2009. Accordingly, Plaintiff is judicially estopped from pursuing his claims against Ducks, whether individually or on behalf of others similarly situated.

If the Court were to find that Plaintiff should be permitted to proceed on any of his claims, Ducks moves to dismiss the matter for improper venue or, in the alternative, to transfer this action to the United States District Court for the Western District of Tennessee, pursuant to 28 U.S.C. § 1404, for the convenience of the parties and witnesses and in the interests of justice. In sum, Plaintiff's claims should be barred in their entirety. However, to the extent Plaintiff is found to have the right to proceed against Ducks on any of his claims, the Middle District of Tennessee is not the proper place to adjudicate those claims.

## II.   BACKGROUND

Ducks is an organization whose "single purpose" is conserving, restoring and managing wetlands and associated habitats for North American waterfowl. (Complaint at ¶ 3).[1] Ducks' mission is supported by a system of volunteers who operate through local Chapters throughout the United States. (Complaint at ¶ 4). Ducks' headquarters, from which it supervises all of its

---

[1] Defendant does not admit any of the allegations set forth in the Complaint, but instead expressly reserves the right to contest any such allegations at any stage of this litigation, including trial. Plaintiff's allegations are set forth herein only for purposes of the instant Motion to Dismiss.

2

employees and conducts all of its official business, is located at One Waterfowl Way, Memphis, Tennessee 38120-2351. (Complaint at ¶ 2).

Plaintiff Marc Sovik, who currently resides in Michigan, was employed by Ducks as a Regional Director for the State of Indiana from approximately June 21, 2004 through January 12, 2008. (Complaint at ¶ 10). Plaintiff and other Regional Directors supported local volunteers at fundraising events at which attendees could donate money or purchase merchandise. (Complaint at ¶ 19). Plaintiff alleges that, in this capacity, he and other Regional Directors regularly worked in excess of forty (40) hours per week, but were unlawfully denied overtime compensation because they were misclassified as exempt executive and/or administrative employees under the FLSA. (Complaint at ¶¶ 14-24).

On July 7, 2009, Plaintiff, through an attorney, filed a Chapter 7 Voluntary Bankruptcy Petition ("Petition") under penalty of perjury in the United States Bankruptcy Court for the Northern District of Indiana ("Bankruptcy Court"). (Petition attached as Exhibit 1).[2] The portion of the Petition entitled "Schedule B – Personal Property" requires Plaintiff to list at number 21 "[o]ther contingent and unliquidated claims of every nature . . ." (Petition at 10). Plaintiff checked "NONE" by number 21. (*Id*.). The Bankruptcy Court entered an Order discharging Plaintiff's debts on October 19, 2009 and an Order Approving Final Account,

---

[2] Defendant has attached pleadings from Plaintiff's bankruptcy proceeding (and, as seen below, pleadings from a prior action initiated by Ducks against Plaintiff in state court) as exhibits to its Motion. The Court may take judicial notice of these pleadings and consider them without converting Defendant's Motion to Dismiss into a motion for summary judgment. *See Plassman v. City of Wauseon*, 1996 U.S. App. LEXIS 14496, at **9-11 (6th Cir. May 14, 1996)(holding "any federal court may take judicial notice of the proceedings in other courts of record" and finding references to proceedings in state court did not constitute "matters outside of the pleadings" and did not convert motion to dismiss to motion for summary judgment)(copy attached as Exhibit 2); *New Eng. Health Care Emples. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) ("A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice;" finding that complaint from previous related lawsuit was properly part of record for motion to dismiss); *Signature Combs, Inc. v. United States*, 253 F. Supp. 2d 1028, 1041 n. 5 (W.D. Tenn. 2003)(stating court may "take judicial notice of pertinent matters of public record," such as bankruptcy order, when adjudicating Rule 12(b)(6) motion to dismiss).

Discharging Trustee and Closing Case on October 26, 2009. (Orders attached as collective Exhibit 3). At no time during the bankruptcy proceedings did Sovik disclose his FLSA claims against Ducks, despite the fact that his employment with Ducks had ended over a year prior to the bankruptcy action and he was therefore aware of all facts allegedly giving rise to his FLSA claims.

On July 28, 2010, Ducks filed suit against Plaintiff in the Chancery Court of Tennessee for the Thirtieth Judicial District at Memphis ("State Court Action"), asserting claims of conversion, fraud, and breach of fiduciary duty based on Sovik's actions while employed by Ducks. (State Court Complaint attached as Exhibit 4). As detailed in the State Court Complaint, between the fall of 2007 and Sovik's resignation on January 11, 2008, Ducks began an investigation into Sovik's activities as a Regional Director. (State Court Complaint at ¶¶ 10-13). By the time of his resignation, Ducks had begun to piece together evidence of serious malfeasance, including Sovik's maintenance of a bank account in Indiana in the name of "Northern Indiana Ducks Unlimited" with Sovik as the only signatory, which constitutes a clear violation of Ducks' policy and a red flag for someone holding a fundraising position. (State Court Complaint at ¶¶ 14-16). Based on the results of its investigation, Ducks filed the State Court Action seeking the recovery of $87,330.69 in compensatory damages for unaccounted funds and merchandise as well as $500,000.00 in punitive damages. (State Court Complaint at ¶¶ 19-30).

Rather than asserting his FLSA claim as a counterclaim in the State Court Action, Sovik filed the instant suit on January 5, 2011. For his allegations of personal jurisdiction and venue, Plaintiff merely states, "Ducks regularly conducts business in the Middle District of Tennessee inasmuch as it raises money and puts on events [through its volunteers] in the Middle District.

4

Ducks also employs individuals who work and raise money in Middle Tennessee." (Complaint at ¶¶ 7, 19). Sovik specifically alleges that venue is proper under 28 U.S.C. § 1391(c). (Complaint at ¶ 8).

Contrary to Plaintiff's general allegations, Ducks does not regularly conduct business in the Middle District of Tennessee. (Affidavit of Wayne Dierks at ¶ 2)(copy attached as Exhibit 5).[3] Ducks does not employ anyone who lives in the Middle District of Tennessee to conduct activities in the Middle District of Tennessee. (Affidavit of Wayne Dierks at ¶ 3). Instead, Ducks employs two Regional Directors for the State of Tennessee: one lives in Memphis (in the Western District of Tennessee) and one lives in Athens (in the Eastern District of Tennessee). (Affidavit of Wayne Dierks at ¶ 4). Moreover, Ducks does not own any property located in the Middle District of Tennessee and does not operate an office in the Middle District of Tennessee. (Affidavit of Wayne Dierks at ¶ 5). To the contrary, Ducks maintains its corporate headquarters in Memphis, in the Western District of Tennessee, where it employs 141 people, including most, if not all, of the relevant witnesses (management, human resources, etc.) for this matter. (Affidavit of Wayne Dierks at ¶ 6).

### III. LAW AND ARGUMENT

   **A.  Plaintiff's Claims Are Barred by Judicial Estoppel Because He Failed to Disclose Such Claims in His Bankruptcy Proceedings.**

   **1.  Plaintiff Made Sworn Representations to the Bankruptcy Court that He Did Not Have Any Claims Against Ducks and the Court Relied on These Representations in Discharging Plaintiff's Debts.**

The doctrine of judicial estoppel bars Plaintiff's claims against Defendant. Pursuant to 11 U.S.C. § 521(a)(1) of the Bankruptcy Code, a debtor is required to file "a schedule of assets

---

[3] When a defendant challenges venue by a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(3), the Court may consider facts outside the complaint, such as affidavits. *See Receiver of Assets of Mid-America Energy, Inc. v. Coffman*, 719 F. Supp. 2d 884, 890-91 (M.D. Tenn. 2010).

5

and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs." *Clarke v. UPS*, 421 B.R. 436, 436 (W.D. Tenn. 2010). A debtor must list a "legal claim or cause of action" as an asset under § 521(a)(1). *Id*. at 439-40 (citing *Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004)). "The duty of disclosure is a continuing one, and a debtor is required to disclose all potential causes of action." *Id*. at 440. "The disclosure obligations of consumer debtors are at the very core of the bankruptcy process and meeting these obligations is part of the price debtors pay for receiving the bankruptcy discharge." *Lewis v. Weyerhaeuser Co.*, 2005 U.S. App. LEXIS 13598, at *12 (6th Cir. July 6, 2005)(internal citation omitted)(copy attached as Exhibit 6). Plaintiff failed to satisfy his duty to disclose his FLSA claims against Ducks to the Bankruptcy Court, and these claims should therefore be dismissed pursuant to judicial estoppel.

The doctrine of judicial estoppel bars a party who has "assume[d] a certain position in a legal proceeding" and "succeed[ed] in maintaining that position" from subsequently "assum[ing] a contrary position . . . simply because [that party's] interests have changed." *Clarke*, 421 B.R. at 440 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)(internal citations omitted)). "Judicial estoppel 'preserve[s] the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship.'" *Id*. (quoting *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002)). The Sixth Circuit has explained judicial estoppel as a "rule against playing fast and loose with the courts, blowing hot and cold as the occasion demands, or having [one's] cake and eating it too." *Lewis*, 2005 U.S. App. LEXIS 13598, at *13 (internal quotations omitted)(quoting *Reynolds v. Commissioner*, 861 F.2d 469, 472 (6th Cir. 1998)). More specifically, judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the

6

contrary position either as a preliminary matter or as part of a final disposition." *Id*. (internal quotations omitted)(quoting *Browning*, 283 F.3d at 775).

Courts of this circuit have not hesitated to apply judicial estoppel to claims that were not disclosed in prior bankruptcy proceedings. For example, in *Dockery v. Countrywide Home Loans, Inc.*, the District Court found the plaintiffs' claims were barred by judicial estoppel under procedural facts identical to those of this case. 2010 U.S. Dist. LEXIS 65647 (W.D. Ky. July 1, 2010)(copy attached as Exhibit 7). In that case, the plaintiffs sued defendant Countrywide for alleged violations of various consumer protection and truth-in-lending statutes. *Id*. at *3. Countrywide moved to dismiss, arguing that the plaintiffs were judicially estopped from pursuing their claims, which were not reported in a prior bankruptcy proceeding. *Id*. at *4.

The *Dockery* plaintiffs had previously filed a Chapter 7 Voluntary Petition on July 24, 2008. In Schedule B to the Petition, the plaintiffs marked "NONE" on the line for "[o]ther contingent and unliquidated claims." *Id*. at *3. Based on the sworn representations in the Petition, the Bankruptcy Court discharged the plaintiffs' debt on October 29, 2008 and closed the case on December 4, 2008. *Id*. The plaintiffs subsequently filed suit against Countrywide on September 14, 2009, over nine months after the closing of bankruptcy proceedings. Based on these facts, the *Dockery* court found that plaintiffs were asserting a position in the lawsuit against Countrywide that was contrary to their sworn representation to the Bankruptcy Court (namely, that they had no claim against Countrywide) and the Bankruptcy Court had adopted this contrary position as part of its final disposition of the bankruptcy case. *Id*. at *7-8. Accordingly, the *Dockery* court found that the plaintiffs' claims were barred by judicial estoppel.

The facts of this case are essentially identical. Plaintiff swore under penalty of perjury in his Chapter 7 Voluntary Bankruptcy Petition that he had no contingent or unliquidated claims of

7

any nature. Based on this representation, the Bankruptcy Court discharged Plaintiff's debts and closed the bankruptcy proceedings in October 2009. However, approximately 14 months later, Plaintiff filed the instant lawsuit, seeking to recover alleged unpaid overtime wages from Ducks. At no time did Plaintiff ever alert the Bankruptcy Court of his claims against Ducks. Accordingly, as was the case in *Dockery*, Plaintiff's claims are barred by judicial estoppel. *See also Clarke*, 421 B.R. at 438-41 (plaintiff judicially estopped from pursuing suit against UPS for failure to report claims during bankruptcy proceedings).

   **2. Plaintiff Cannot Avoid Judicial Estoppel By Claiming Inadvertence or By Seeking to Re-Open His Bankruptcy Proceedings to Disclose His Claims Against Ducks.**

Plaintiff cannot save his claims by arguing that his failure to disclose his claims to the Bankruptcy Court was inadvertent. As the *Dockery* court noted:

> [T]he Sixth Circuit [has] held that there are two circumstances where a debtor's failure to disclose a cause of action in a bankruptcy proceeding may be inadvertent: (1) where the debtor lacks knowledge of the factual basis of the undisclosed claims and (2) where the debtor has no motive for concealment. *Browning*, 283 F.3d at 776. Knowledge does not require the debtor [to] know all the facts or even the legal basis for the cause of action, rather, if the debtor has enough information [] to suggest that it may have a possible cause of action, then it is a 'known' cause of action such that it must be disclosed. *In re Costal*, 179 F.3d at 208. Motive may be inferred from knowledge. *Felix v. Dow Chemical*, 2008 U.S. Dist. LEXIS 8946, at *6 (S.D. Ohio Jan. 23, 2008); *Tyler v. Federal Express Corp.*, 420 F. Supp. 2d 849, 858 (W.D. Tenn. 2005), *aff'd* 206 Fed. App'x 500 (6th Cir. Nov. 16, 2006). For example, in *Tyler v. Federal Express Corp.*, the court found that when the plaintiff "filed her bankruptcy petition she was aware of, yet failed to disclose, a then pending claim." 420 F. Supp. 2d at 858. The court went on to say "[a] motive to conceal can be inferred from this fact alone, as by omitting the claims, she could keep any proceeds for herself and not have them become part of the bankruptcy estate." *Id*. . . .
>
> As to inadvertence or mistake, the record reflects Plaintiffs had knowledge of the factual basis of the undisclosed claims and there was motive for concealment. Plaintiffs' claims in this action arose from events taking place in 2004 through 2008. From the Complaint it is evident Plaintiffs had knowledge of the factual basis of the now asserted claims at the time of their bankruptcy. Motive may also

8

be inferred here since any recovery post discharge would not become part of Plaintiffs' bankruptcy estate but would instead benefit Plaintiffs.

*Id.* at *8-9.

As in *Dockery*, Plaintiff in this case had knowledge of all the alleged facts giving rise to his claim at the time he initiated his bankruptcy proceedings. Plaintiff's FLSA claims arise from his employment, which lasted from 2004 to 2008, and it is evident from the face of the Complaint that Plaintiff relies entirely on facts that allegedly occurred during his employment. Thus, Plaintiff had "information to suggest that [he] may have a possible cause of action, [and] it is [therefore] a 'known' cause of action such that it must be disclosed." *Id.* at *8 (citing *In re Costal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999)). Moreover, a motive to conceal the claims can be inferred from Plaintiff's knowledge and from the fact that he stands to benefit from the exclusion of his claims from the bankruptcy estate. *Id.* (citing *Tyler v. Federal Express Corp.*, 420 F. Supp. 2d 849, 858 (W.D. Tenn. 1995), *aff'd* 2006 Fed. App'x 500 (6th Cir. Nov. 16, 2006)). Accordingly, Plaintiff may not avoid the application of judicial estoppel to his claims by arguing inadvertence or lack of motive.

Finally, any effort by Plaintiff to amend his bankruptcy pleadings to list his claims as an asset in reaction to Defendant's Motion to Dismiss will have no effect on the application of the judicial estoppel doctrine. *See Dockery*, 2010 U.S. Dist. LEXIS 65647, at *11-14 (plaintiffs cannot demonstrate absence of bad faith by trying to re-open bankruptcy proceedings to disclose claim in response to defendant's motion to dismiss); *Tyler*, 420 F. Supp. 2d at 858-59 (applying judicial estoppel where plaintiff did not amend bankruptcy filings until after motion to dismiss filed and court issued order to show cause), *aff'd* 206 Fed. Appx. 500 (6th Cir. 2006); *Yates v. Cash America Inc.*, 2010 U.S. Dist. LEXIS 23961, at *7-8 (W.D. Tenn. Mar. 15, 2010) (finding judicial estoppel barred suit where plaintiff did not acknowledge suit in bankruptcy court until

9

"forced to do so" by motion to dismiss) (copy attached as Exhibit 8). As the United States District Court for the Western District of Tennessee recently noted:

> [T]he success of our bankruptcy laws requires a debtor's full and honest disclosure. Allowing [Plaintiff] to back-up, re-open the bankruptcy case, and amend [her] bankruptcy filings, only after [her] omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if [she] is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtors' assets.

*Tyler*, 420 F. Supp. 2d at 859 (quoting *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir. 2002)). Accordingly, Plaintiff's claims are barred by judicial estoppel and should be dismissed with prejudice in their entirety.

### B. Venue Is Improper in This Court and the Matter Should Either Be Dismissed or Transferred to the Western District of Tennessee.

When a defendant challenges venue by a motion pursuant to Fed. R. Civ. P. 12(b)(3), the plaintiff bears the burden of establishing proper venue, and the Court may examine facts outside of the Complaint. *Receiver of Assets of Mid-America Energy, Inc. v. Coffman*, 719 F. Supp. 2d 884, 890-891 (M.D. Tenn. 2010). If the Court finds that venue is improper, it has discretion to dismiss the case or transfer the case to a district where venue is proper. *Coffman*, 719 F.Supp. 2d at 891 (citing *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 262 (6th Cir. 1998)). As shown below, venue is improper in this district under 28 U.S.C. § 1391(c), and the Court therefore should dismiss Plaintiff's claims or, in the alternative, transfer the matter to the Western District of Tennessee.

10

Case 3:11-cv-00018   Document 9   Filed 03/11/11   Page 10 of 17 PageID #: 38

1. **Ducks Does Not Have Substantial, Continuous, or Systematic Contacts with the Middle District of Tennessee as Required by 28 U.S.C. § 1391(c).**

Pursuant to 28 U.S.C. § 1391(b), venue in civil actions not based solely on diversity lies in one of three places: (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred …, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." Subsection (c) of § 1391 further provides that if the defendant is a corporation, the defendant "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." However, the concept of "residency" is further limited, as the subsection continues:

> In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

28 U.S.C. § 1391(c). Therefore, to determine whether the Middle District of Tennessee is the proper venue for this matter, the Court must analyze whether Ducks would properly be subject to personal jurisdiction in this district if it were treated as a separate State.

It is well-settled that personal jurisdiction exists only when a defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Youn v. Track, Inc.*, 324 F.3d 409, 417-18 (6th Cir. 2003) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Personal jurisdiction may be "specific" or "general." *Id.* Specific jurisdiction requires that the

11

Case 3:11-cv-00018   Document 9   Filed 03/11/11   Page 11 of 17 PageID #: 39

defendant's contacts with the forum relate to the suit in which jurisdiction is sought. *Id.* General jurisdiction, on the other hand, permits the exercise of jurisdiction in suits not related to the defendant's contacts with the forum, but the contacts must be "substantial" and "continuous and systematic" to subject a defendant to personal jurisdiction in a particular forum. *Id.* Under either jurisdictional analysis, the Middle District of Tennessee is not the proper venue for Sovik's claims because Ducks' contacts with this district are insufficient to establish personal jurisdiction.

First, this Court does not have specific jurisdiction over Ducks because Ducks' alleged contacts with the Middle District of Tennessee have nothing to do with the instant lawsuit. Plaintiff seeks to bring a collective action under the FLSA on behalf of himself and similarly situated Regional Directors employed by Ducks who allegedly were not paid overtime. Thus, to establish specific jurisdiction, Plaintiff logically would have to demonstrate that Ducks employed him to work as a Regional Director in the Middle District of Tennessee, that Ducks employed similarly situated individuals to work as Regional Directors in the Middle District of Tennessee, and/or that some policy, plan, or decision by Ducks to deny its Regional Directors overtime pay somehow emanated from this district. Plaintiff has not and cannot make such a showing.

As an initial matter, Plaintiff worked as a Regional Director in Indiana and resides in Michigan, so his former employment with Ducks has no relation to this district. Moreover, he does not specifically allege that any similarly situated Regional Director has resided or worked in the Middle District of Tennessee.[4] Instead, he generally alleges that Ducks "employs individuals who work and raise money in Middle Tennessee." (Affidavit of Wayne Dierks at ¶ 7). This

---

[4] By contrast, Ducks has adduced evidence that its two Regional Directors for the State of Tennessee reside in the Eastern and Western Districts of this State and that it does not employ anyone who lives in the Middle District of Tennessee to conduct business in the Middle District of Tennessee. (Affidavit of Wayne Dierks at ¶¶ 3-4).

12

allegation is insufficient on its face to establish specific jurisdiction. Moreover, it is incorrect, as the evidence produced by Ducks establishes that it does not employ anyone who resides in the Middle District of Tennessee to conduct activities in the Middle District of Tennessee. (Affidavit of Wayne Dierks at ¶ 3). Finally, Plaintiff does not allege that any policy, plan, or decision to deny Regional Directors overtime pay originated in or in any way relates to the Middle District of Tennessee. Accordingly, there is absolutely no basis for the exercise of specific personal jurisdiction in this district.

Plaintiff is likewise unable to establish general jurisdiction over Ducks in this district. To meet the test of general jurisdiction, Ducks would have to maintain substantial, continuous and systematic contacts in the Middle District of Tennessee. However, Plaintiff has not alleged any such contacts because they simply do not exist. As noted above, Plaintiff alleges generally that Ducks "raises money and puts on events" through its volunteers in the Middle District of Tennessee. This creates a tenuous relation, at best, between the Defendant and the forum. Additionally, Plaintiff's allegation that Ducks "employs individuals who work and raise money in Middle Tennessee" is incorrect. Ducks does not employ anyone who lives in the Middle District of Tennessee to conduct activities in the Middle District of Tennessee. (Affidavit of Wayne Dierks at ¶ 3). Instead, Ducks employs two Regional Directors for the State of Tennessee: one lives in Memphis (in the Western District of Tennessee) and one lives in Athens (in the Eastern District of Tennessee). (Affidavit of Wayne Dierks at ¶ 4). Moreover, Ducks does not own an office in the Middle District and does not own land in the Middle District. (Affidavit of Wayne Dierks at ¶¶ 4-5). Therefore, if the Middle District were a separate state, Ducks would not be subject to personal jurisdiction in the forum. Consequently, the Middle District is an improper forum under the venue statute. Ducks therefore requests that the Court

exercise its discretion to dismiss the instant case in its entirety. *Receiver of Assets of Mid-America Energy, Inc. v. Coffman*, 719 F. Supp. 2d at 891 (district court has discretion to dismiss case for improper venue). In the alternative, should the Court decline to dismiss the matter for improper venue, Ducks requests that the matter be transferred to a more appropriate forum, the Western District of Tennessee.

### 2. If the Court Chooses Not to Dismiss the Matter for Improper Venue, the Case Should Be Transferred to the Western District of Tennessee.

Pursuant to 28 U.S.C. § 1404(a), a district court may transfer any civil action to another appropriate venue considering "the convenience of the parties and witnesses" and "the interests of justice." This Court recently recognized that "the decision to transfer turns on convenience of the parties and witnesses." *Stewart v. American Eagle Airlines, Inc.*, 2010 U.S. Dist. LEXIS 117308, at *4-5 (M.D. Tenn. Nov. 3, 2010) (copy attached as Exhibit 9) (citing *Ferens v. John Deere*, 494 U.S. 516, 528-529 (1990)). Further, the standard for transfer under § 1404(a) is lesser than under the judicial doctrine of *forum non conveniens. Stewart*, 2010 U.S. Dist. LEXIS 117308, at *5 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981)). Under § 1404(a), the Court "should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness." *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 n. 1 (6th Cir. 2006).

The Court's recent ruling in *Stewart* provides an analogous situation to the case at hand for when transfer is appropriate. In that case, four plaintiffs filed a class action under the Railway Labor Act against two airlines and two pilot associations, all four of which were located in the judicial district for the Northern District of Texas. *Stewart*, 2010 U.S. Dist. LEXIS 117308, at *2-3. Based on the limited connection of the plaintiffs to the Middle District of

14

Tennessee (only one of them lived in Tennessee), the fact that grievance and arbitration proceedings had already occurred in the Northern District of Texas on a labor agreement which had been administered by defendants in that jurisdiction, and the potential for significant impact on over 1,000 pilots in Texas, the Court ruled that transfer was appropriate. *Id.* at *10-11. The Court relied heavily on the "center of gravity" of the case being in Texas, concluding that "Texas has a significant interest in ensuring that Texas's major businesses and unions abide by the applicable laws" and that "Texas has a greater interest in this action than Tennessee." *Id.* Accordingly, the Court transferred the cause to the Northern District of Texas. *Id.* at *11.

In the present case, the convenience of the parties and witness and the interests of justice favor a transfer of this case to the Western District of Tennessee. First, the "center of gravity" of this lawsuit is Ducks' national headquarters in Shelby County, Tennessee. At its headquarters, Ducks employs 141 people, including most, if not all, of the relevant witnesses (management, human resources, etc.). (Affidavit of Wayne Dierks at ¶ 6). On Plaintiff's side of the equation, neither Plaintiff nor any known witness or putative plaintiff lives in the Middle District of Tennessee. Thus, convenience alone favors a transfer. However, there is another practical consideration of justice that supports transfer of the matter to the Western District of Tennessee: there is already a lawsuit pending between the parties in the Chancery Court of Shelby County, Tennessee. In that lawsuit, Sovik has not challenged the jurisdiction of the Court, but has instead made a general appearance through counsel, filed motions, conducted discovery, and otherwise actively participated in the litigation. Accordingly, for Sovik, who lives in Michigan, a Court in Memphis is apparently as convenient a forum as a Court in Nashville. Balancing the interests of justice and the parties, then, a transfer to the Western District of Tennessee is a practical solution to return this case to the place where the parties are already litigating other matters and which

15

serves as the "center of gravity" for the lawsuit involving Defendant's conduct at its headquarters.

IV. **CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiff's claims in their entirety, with prejudice, pursuant to the doctrine of judicial estoppel. Should the Court determine that any of Plaintiff's claims should be permitted to proceed, the matter should be dismissed for improper venue or, in the alternative, transferred to the United States District Court for the Western District of Tennessee.

Respectfully submitted,

/s/ Paul E. Prather
Paul E. Prather (TN Bar No. 10089)
KIESEWETTER WISE KAPLAN PRATHER, PLC
3725 Champion Hills Drive, Suite 3000
Memphis, Tennessee 38125
Telephone: (901) 795-6695
Facsimile: (901) 795-1646
pprather@kwkplaw.com

Attorneys for Defendant Ducks Unlimited, Inc.

**CERTIFICATE OF SERVICE**

   I hereby certify that on the 11th day of March, 2011, I electronically filed the foregoing with the Clerk of Court using the ECF system which sent notification of such filing to the following:

  Peter F. Klett, III, Esq.
  Robert C. Bigelow, Esq.
  DICKINSON WRIGHT PLLC
  424 Church Street, Suite 1401
  Nashville, Tennessee 37219


             /s/ Paul E. Prather

17

Case 3:11-cv-00018   Document 9   Filed 03/11/11   Page 17 of 17 PageID #: 45