IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARC SOVIK, on behalf of himself and all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 3:11-cv-0018 |
| ) | Judge Trauger |
| DUCKS UNLIMITED, INC., ) ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the court is defendant Ducks Unlimited, Inc.'s Motion to Dismiss, or, in the Alternative, to Transfer Venue (Docket No. 8), to which the plaintiff has filed a response (Docket No. 15). For the reasons discussed below, the court will grant in part and deny in part the plaintiff's motion and will transfer this case to the Western District of Tennessee.

## BACKGROUND

From June 2004 through January 12, 2008, the plaintiff, Marc Sovik, was employed as a Regional Director for the State of Indiana by defendant Ducks Unlimited, Inc. ("Ducks").[1] Ducks is an organization that pursues the "'single purpose' [of] conserving, restoring and managing wetlands and associated habitats for North American waterfowl." (Docket No. 1 ¶ 3.) The plaintiff's job responsibilities "included supporting local volunteers as they held fundraising events at which attendees could donate money or purchase merchandise." (*Id.* ¶ 19.)

The plaintiff alleges that Ducks violated the Fair Labor Standards Act ("FLSA"), 29

---

[1] Unless otherwise noted, the allegations are drawn from the plaintiff's Complaint (Docket No. 1).

U.S.C. § 201 *et seq.*, by failing to pay him overtime for hours worked in excess of 40 per week. Sovik alleges that Ducks incorrectly classified its regional directors, who are salaried, as executive or administrative employees who are exempt from the FLSA's overtime provision. The plaintiff seeks to represent other similarly situated regional directors and to have his claims certified as a collective action.

On July 7, 2009, the plaintiff filed a Voluntary Petition for Chapter 7 Bankruptcy in the Northern District of Indiana. (*See* Docket No. 9, Ex.1.) The bankruptcy court entered an Order discharging the plaintiff's debts on October 19, 2009 and an Order Approving Final Account, Discharging Trustee, and Closing Case on October 26, 2009. (*Id.*, Ex. 3.) The plaintiff failed, at any point during the bankruptcy proceedings, to disclose that he had a potential FLSA claim against Ducks. (*See id.*, Ex. 1 at 12 (bankruptcy petition stating "none" in response to question asking for a list of "[o]ther contingent and unliquidated claims of every nature").)

On July 28, 2010, Ducks filed suit against the plaintiff in state court in Memphis, Tennessee (the "Memphis Action"), asserting claims for conversion, fraud, and breach of fiduciary duty for Sovik's actions during his employment at Ducks. (*See id.*, Ex. 4.) The claims centered on the allegation that Sovik had opened a personal bank account under the name of "Northern Indiana Ducks Unlimited" and used Ducks' funds for personal expenses. (*Id.* ¶¶ 14-15.) The Memphis Action is still pending.

On January 5, 2011, the plaintiff filed the instant action against Ducks. The plaintiff currently resides in Michigan, and Ducks is headquartered in Memphis, Tennessee. Ducks employs two regional directors in the State of Tennessee, one who lives in Memphis (located in

the Western District of Tennessee) and one who lives in Athens (located in the Eastern District of Tennessee). (*Id.*, Ex. 5 ¶ 4 (affidavit of Wayne Dierks, Ducks' Human Resources Director).) Ducks does not employ anyone who lives in the Middle District of Tennessee, nor does it own any property or operate an office in this district. (*Id.* ¶¶ 3, 5.) Ducks' central management and human resources employees work at the corporation's Memphis headquarters. (*Id.* ¶ 6.)

The defendant has filed a Motion to Dismiss, or, in the Alternative, to Transfer Venue, pursuant to Federal Rule of Civil Procedure 12. It argues that the plaintiff's claims must be dismissed under the doctrine of judicial estoppel and, alternatively, that the Middle District of Tennessee is an improper venue for this suit.

## ANALYSIS

### I. Judicial Estoppel

First, the defendant argues that the plaintiff's claims must be dismissed under the doctrine of judicial estoppel, because he failed to disclose any potential FLSA claims during his bankruptcy proceedings. (Docket No. 9 at 5-10.)

The defendant has filed a motion to dismiss pursuant to Rule 12(b)(6), but the facts relevant to the issue of judicial estoppel go beyond the allegations contained in the plaintiff's Complaint, and both parties have submitted relevant extrinsic material. Accordingly, the court will convert the defendant's motion into a motion for summary judgment. Fed. R. Civ. P. 12(d); *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010) (noting that the district court converted a motion to dismiss on judicial estoppel grounds into a motion for summary judgment). Rule 12(d) provides that, in this circumstance, "[a]ll parties must be given

3

a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Because it appears likely to the court that both parties have already submitted all relevant material, any further opportunity to do so is unnecessary.[2]

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the [plaintiff]." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009). An issue of fact is "genuine" only if a reasonable jury could find for the plaintiff. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Judicial estoppel "'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *White*, 617 F.3d at 476 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). This preserves the integrity of the court system "'by preventing a party from abusing the judicial process through cynical gamesmanship.'" *Id.* (quoting *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002)). Courts must apply judicial estoppel with caution, however, "to avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement." *Eubanks v. CBSK Fin. Group., Inc.*, 385 F.3d 894, 897 (6th Cir. 2004) (quotation marks omitted).

---

[2] The defendant has submitted filings from the plaintiff's bankruptcy case, and the plaintiff has submitted his own affidavit.

Courts apply judicial estoppel when a party "(1) assert[s] a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition.'" *White*, 617 F.3d at 476 (quoting *Browning*, 283 F.3d at 775-76) (quotation marks omitted). The Bankruptcy Code requires debtors to file, among other things, "a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs." 11 U.S.C. § 521(a)(1). Thus, if a debtor fails to disclose during his bankruptcy proceedings that he has a potential civil claim against a third party, he may be estopped from later filing that claim. *White*, 617 F.3d at 484; *Lewis v. Weyerhaeuser Co.*, 141 Fed. Appx. 420, 428-29 (6th Cir. 2005). Here, it is undisputed that the plaintiff failed to list any claims against Ducks in his bankruptcy petition and that, in disposing of the bankruptcy case, the bankruptcy court relied on the plaintiff's representations regarding his assets.

But "judicial estoppel is inappropriate in cases of conduct amounting to nothing more than mistake or inadvertence." *White*, 617 F.3d at 476 (quoting *Browning*, 283 F.3d at 776). The Sixth Circuit has held that a debtor has committed a mere mistake if he has: (1) not acted in bad faith; and (2) not attempted to mislead the prior court. *Browning*, 283 F.3d at 776 (stating that it is "consistent with the policy reasons behind the doctrine of judicial estoppel" to make "bad faith or an attempt to mislead the court . . . a necessary prerequisite to the application of judicial estoppel"); *Eubanks*, 385 F.3d at 897 (stating that *Browning* "dealt with the issue of whether bad faith or an attempt to mislead the court was necessary"); *White*, 617 F.3d at 477 (noting that the "absence of bad faith" is a critical factor); *Lewis*, 141 Fed. Appx. at 428

5

(applying judicial estoppel because the facts of the case "support[ed] a finding that [the debtor] acted intentionally and in bad faith").

The Sixth Circuit has found that circumstances rendering a debtor's failure to disclose a claim inadvertent include: "(1) 'where the debtor lacks knowledge of the factual basis of the undisclosed claims,' and (2) where 'the debtor has no motive for concealment.'" *White*, 617 F.3d at 476 (quoting *Browning*, 283 F.3d at 776). Here, the plaintiff left Ducks' employment in January 2008, filed his bankruptcy petition in July 2009, completed the bankruptcy process in October 2009, and filed this suit in January 2011. The plaintiff's FLSA claim is premised on the allegations that he worked unpaid overtime and that his job duties did not exempt him from federal overtime requirements. Because his bankruptcy petition was filed after his employment ended, the plaintiff obviously already knew the relevant facts regarding his hours and duties. In addition, generally speaking, a debtor always has a financial motive to conceal potential civil claims from the bankruptcy court, because then the proceeds of those claims might remain outside of the bankruptcy estate. *See White*, 617 F.3d at 479.

The plaintiff argues, however, that his failure to list the FLSA claim was inadvertent. (Docket No. 15 at 6-10.) In an affidavit, the plaintiff states that, when he filed his bankruptcy petition, he did not know that he had been legally entitled to overtime payments from Ducks. (*Id.*, Ex. 2 ¶ 4 ("Since I was paid a salary, I did not think at the time that I was entitled to overtime."). The plaintiff claims that he only became aware of a potential FLSA claim after hiring his current counsel in July 2010 to defend him in the Memphis Action; in the course of their discussions, the lawyers informed the plaintiff that he might have a viable claim against

6

Ducks. (*Id.* ¶ 9; Docket No. 15 at 3, 7.)

In support of this contention, the plaintiff points out that his potential recovery on his FLSA claim is severely limited. (Docket No. 15 at 7.) The applicable statute of limitations is (at most) three years, *see* 29 U.S.C. § 255(a), and the plaintiff concedes that, because he filed this action on January 5, 2011, he can only recover for overtime that he worked after January 5, 2008. (Docket No. 15 at 7.) Given that the plaintiff's employment ended seven days later, on January 12, 2008, his recovery is limited to damages related to a single week of work. (*Id.*) The plaintiff estimates that his FLSA claim is worth only approximately $500.[3] (*Id.* at 9.)

Under the circumstances of this case, it is more likely than not that the plaintiff's omission of the FLSA claim from his bankruptcy petition was inadvertent. First, even though the plaintiff knew the number of hours he had worked and the duties he had performed as a regional director, it does not necessarily follow that he knew that Ducks owed him overtime compensation. Many salaried employees are properly classified as exempt from federal overtime requirements; it is unrealistic to expect laypersons to automatically know when they have been misclassified by their employers.[4] Although laypersons are charged with constructive knowledge of the law in many circumstances, here, the question is whether the plaintiff acted in bad faith by omitting the FLSA claim from his bankruptcy petition. If the plaintiff did not know that Ducks had misclassified its regional directors as exempt employees, he could not possibly

---

[3] The FLSA provides for recovery of unpaid overtime compensation and "an additional equal amount [of] liquidated damages." 29 U.S.C. § 216(b). It is unclear whether the plaintiff's $500 estimate includes liquidated damages.

[4] In this respect, the plaintiff's overtime claim is different from, say, a battery claim, in which a reasonable layperson would know that the defendant's actions were illegal.

have been acting in bad faith.[5]

Second, if the plaintiff had intentionally concealed his FLSA claim from the bankruptcy court, he would not have waited 15 months after the conclusion of the bankruptcy process – by which time his recoverable damages had fallen to, at most, several hundred dollars – to file the claim.[6] Instead, the plaintiff's actions are consistent with his assertion that he first learned of the claim after conferring with the lawyers defending him in the Memphis Action. Notably, although the plaintiff's individual damages are limited, the *overall* potential liability that Ducks faces in this putative collective action may be large. Reading between the lines, the court surmises that one of the plaintiff's primary motives in filing this suit was to gain leverage in negotiating a settlement of the Memphis Action.[7] If so, this is consistent with the plaintiff's

---

[5] The defendant cites *Dockery v. Countrywide Home Loans, Inc.*, No. 3:09-CV-00821, 2010 U.S. Dist. LEXIS 65647 (W.D. Ky. July 1, 2010), an unpublished case from the Western District of Kentucky, in which the court applied judicial estoppel to bar the plaintiffs' claims. In *Dockery*, the plaintiffs sued a mortgage company on a number of statutory and common-law claims relating to their mortgage. *Id.* at *3-4. The plaintiffs argued that they had omitted these claims from their bankruptcy petition 14 months earlier because "they did not learn of the potential for a lawsuit until consulting with an attorney" and because "they lacked an understanding of the law." *Id.* at *10. In its opinion, the court failed to address this argument, instead finding that estoppel was appropriate because the plaintiffs had failed to reopen the bankruptcy case to amend their bankruptcy filings and that this alone was sufficient to constitute bad faith. *Id.* at *12.
    *Dockery* did not explain how a debtor could possibly omit a claim in bad faith if the debtor genuinely did not know that the claim existed. *Dockery* is not binding on this court, and, to the extent that it is inconsistent with this Memorandum, the court will decline to follow it.

[6] The fact that the plaintiff's potential recovery is so small also effectively negates any financial motive he might have had to shield the claim's proceeds from his bankruptcy estate.

[7] Of course, whether the plaintiff brought this suit in an attempt to pressure Ducks to settle the Memphis action has no bearing on whether he believes, in good faith, that his FLSA claim is meritorious. Even if multiple motives underlay the filing of this suit, that is not the type of "cynical gamesmanship" that the doctrine of judicial estoppel seeks to prevent.

explanation that he developed the claim while discussing matters with his Memphis Action lawyers.

In sum, the court finds that it is unlikely that, during the bankruptcy process, the plaintiff knew of his potential FLSA claim against Ducks. Consequently, he did not conceal the claim from the bankruptcy court intentionally or in bad faith. In this key respect, this case contrasts with cases that apply judicial estoppel; in the latter cases, the debtors clearly knew of their potential claims during their bankruptcy proceedings. *See, e.g.*, *White*, 617 F.3d at 474-75 (the plaintiff had filed an EEOC charge before filing bankruptcy and filed her sexual harassment suit one day after her bankruptcy plan was confirmed); *Lewis*, 141 Fed. Appx. at 427-28 (before filing her bankruptcy petition, the plaintiff told her bankruptcy counsel that she had potential discrimination claims, and she sent a letter regarding her claim to the EEOC one month after her bankruptcy plan was confirmed); *Clarke v. United Parcel Serv., Inc.*, 421 B.R. 436 (W.D. Tenn. 2010) (the plaintiff filed a motion in bankruptcy court to modify her plan payment schedule without mentioning her pending EEOC discrimination charge); *Thompson v. Davidson Transit Org.*, 725 F. Supp. 2d 701, 706 (M.D. Tenn. 2010) (the plaintiff filed his § 1983 claims one day after filing his bankruptcy petition).

The defendant points out that, since filing the instant action, the plaintiff has not reopened his bankruptcy case in an effort to disclose the FLSA claim to the bankruptcy court. (Docket No. 9 at 9-10.) It is true that, when determining whether debtors had acted in bad faith, several Sixth Circuit cases have focused on the debtors' efforts to amend their bankruptcy filings. For example, in *Eubanks*, the plaintiffs had initially omitted a claim from their

9

bankruptcy petition, but they had informed the trustee of the claim one month later and had twice attempted to amend the bankruptcy schedules to name the claim as an asset. *Eubanks*, 385 F.3d at 895, 898-99. The court held that this showed the debtors' lack of intent to conceal the claim. *Id.* at 897. Conversely, in *White*, the court found that the plaintiff's attempts to amend her bankruptcy filings, undertaken after the defendant had already filed a motion to dismiss on judicial estoppel grounds, were insufficient to show an absence of bad faith. *White*, 617 F.3d at 480-83. Although these cases show that a plaintiff's attempts to amend his bankruptcy filings are *relevant* to a court's determination of bad faith, they do not hold that such attempts are a *necessary prerequisite* for a finding of good faith. Here, even though the plaintiff has not yet reopened his closed bankruptcy case, this is not sufficient to show that he omitted the FLSA claim from his bankruptcy petition in bad faith or otherwise acted in bad faith during his bankruptcy proceedings.

Because the defendant has not shown that the plaintiff acted intentionally or in bad faith during his bankruptcy proceedings, judicial estoppel does not apply, and the court will not dismiss the plaintiff's claims.

**II.     Venue**

The defendant further argues that the Middle District of Tennessee is an improper venue for this suit. It requests, pursuant to Rule 12(b)(3), that the court dismiss the case without prejudice or, in the alternative, transfer the case to the Western District of Tennessee.

If a case is filed in a judicial district in which venue is improper, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could

10

have been brought." 28 U.S.C. § 1406(a). Under 28 U.S.C. § 1404(a), even if venue is proper, a court may, "[f]or the convenience of parties and witnesses [and] in the interest of justice," transfer the case "to any other district or division where it might have been brought."

The parties do not dispute that this action could have been brought in the Western District of Tennessee, and the court finds that this case should be transferred there pursuant to § 1404(a).[8] With that statute, "Congress intended to give district courts the discretion to transfer cases on an individual basis by considering convenience and fairness." *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 537 (6th Cir. 2002). When ruling on a motion under § 1404(a), "a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991). Factors relevant to the convenience of the parties include: (1) the location of willing and unwilling witnesses; (2) the residence of the parties; (3) the location of sources of proof; (4) the location of the events that gave rise to the dispute; and (5) the plaintiff's choice of forum. *Stewart v. Am. Eagle Airlines,*

---

[8] This makes it unnecessary for the court to examine whether venue is proper in the Middle District of Tennessee in the first place. If venue here were improper, the court would be required to dismiss or transfer the case under § 1406. In that instance, the court would exercise its discretion to transfer the case to the Western District of Tennessee rather than to dismiss it. *See* 17 *Moore's Federal Practice - Civil* § 111.34 (3d ed. 2011) ("The better approach . . . is for the court to transfer. Such an approach comports with the purpose of Section 1406(a)."); *Delta Media Group, Inc. v. Kee Group, Inc.*, No. 5:07CV01597, 2007 U.S. Dist. LEXIS 80878, at *24 (N.D. Ohio Oct. 31, 2007) ("Doubts about whether to transfer or dismiss are usually resolved in favor of transfer because the interest of justice generally is better served by transfer."). Thus, regardless of whether § 1404 or § 1406 is the applicable statute, the case will be transferred.

*Inc.*, No. 3:10-00494, 2010 U.S. Dist. LEXIS 117308 (M.D. Tenn. Nov. 3, 2010); *see also, e.g.*, *Krawec v. Allegany Co-op Ins. Co.*, No. 1:08-CV-2124, 2009 U.S. Dist. LEXIS 57792, at *14-15 (N.D. Ohio July 7, 2009) (listing various factors relevant to a §1404(a) determination).

Here, transfer is appropriate because the defendant and its employee witnesses are located in the Western District of Tennessee, whereas the Middle District of Tennessee has no connection to the parties, the witnesses, or the events relevant to this suit. No potential witnesses reside here, and no relevant conduct occurred here.[9] Instead, the defendant is headquartered in the Memphis, and, according to the unrebutted affidavit of the defendant's human resources director, "most, if not all, of the relevant witnesses (management, human resources, etc.) for this matter" reside there. (Docket No. 9, Ex. 5 ¶ 6.) It will clearly be more convenient for the defendant and its witnesses to proceed in Memphis.

The countervailing factors are not sufficient to prevent transfer to the Western District of Tennessee. The plaintiff's choice of forum weighs in favor of keeping the action here, but, because the plaintiff resides in Michigan, this choice receives less deference than usual. *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Guarantee Trust Life Ins. Co.*, 8 F. Supp. 2d 1008, 1010-11 (N.D. Ohio 1998) ("[S]everal courts have indicated that if plaintiff chooses a forum that is not the plaintiff's residence, this choice is given less consideration."). Furthermore, it will not be significantly more onerous for the plaintiff (or for out-of-state class members who

---

[9] The plaintiff points out that Ducks conducts fundraising in Nashville (Docket No. 15 at 16), but this suit has no connection to those activities. Even if this suit is eventually certified as a collective action and Ducks' Tennessee regional directors decide to opt in, those witnesses do not reside in this district.

eventually opt in to the collective action) to travel to Memphis instead of Nashville. In fact, the parties are already litigating against each other in a Memphis state court.

On balance, Memphis' connections to the defendant and the witnesses outweigh any factors that support keeping the action in Nashville. Accordingly, the court will transfer this action to the Western District of Tennessee.

## **CONCLUSION**

For the reasons stated herein, the plaintiff's Motion to Dismiss, or, in the Alternative, to Transfer will be granted in part and denied in part. The defendant has not shown that the plaintiff's claims are barred by judicial estoppel, but it has shown that Memphis is a more appropriate venue for this action. Therefore, the action will be transferred to the Western District of Tennessee.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge